BRIAN L. DINGWELL ET AL. *v.* TOWN OF LITCHFIELD
(2717)

BORDEN, DALY and KULAWIZ, Js.

Argued April 25—decision released August 6, 1985

*Donald R. Holtman,* with whom, on the brief, was *Dean F. Radke,* for the appellant (defendant).

*E. Seward Stevens,* for the appellees (plaintiffs).

KULAWIZ, J. The plaintiffs brought this action seeking injunctive relief and damages against the town of Litchfield incident to the town's maintenance of a public landfill operation adjacent to the plaintiffs' property. The plaintiffs allege that the landfill constitutes a nuisance and has damaged them by polluting their well and contaminating their water supply. The trial court, *Hon. Robert A. Wall,* state trial referee, rendered a judgment awarding damages to the plaintiffs due to the contamination and enjoining the town "from continuing the nuisance and [ordering it] to take such corrective measures to enable the plaintiffs to be free from contamination emanating from the landfill . . . ." From that judgment, the town has appealed.

There is little dispute concerning the facts. The town has operated a sanitary landfill on Little Pitch Road for over fifty years. The landfill, which is located far from the center of town, is the only landfill, public or private, in the town.

In 1980, the plaintiffs purchased land adjacent to the landfill. They built a house on their land and, as part of the construction, had a well dug on their property. Several months thereafter, the water from the well was determined to be unpotable and polluted. The plaintiffs had to close the well and obtain water from neighbors.

The well was found to be contaminated by leachate, an inevitable by-product of landfill operations. While the production of leachate is controllable to a certain extent, it cannot be entirely eliminated. The Connecticut department of environmental protection (DEP) has issued a pollution abatement order with respect to the town's landfill. Even though the landfill operation is being closed, leachate therefrom will still be produced and will contaminate streams in the area for at least a generation.

The trial court found that the plaintiffs' well was contaminated by leachate from the defendant's landfill. It found that this condition was created and maintained by the town and determined that the condition was an absolute nuisance under the common law. The trial court further found that the nuisance arose from the town's violation of environmental protection laws, specifically General Statutes § 22a-427, formerly § 25-54f,[1] which prohibits a person or municipality from causing pollution to the waters of the state.

The town challenges both bases of the trial court's decision in its appeal. Our conclusion that the trial court did not err in finding an absolute nuisance based on the common law is dispositive of the appeal. We therefore find it unnecessary to reach the question of whether there is a private cause of action under General Statutes § 22a-16 or § 22a-427, as the parties urge us to do.

The town claims that the law of absolute nuisance is inapplicable to the facts of this case because of the town's status as a public authority and that, to the extent it is applicable, there was insufficient evidence to find that a nuisance existed.

---

[1] General Statutes (Rev. to 1981) § 25-54f was transferred to General Statutes § 22a-427 in 1983.

"It is well established that a town may be held liable for injury resulting from a nuisance created and maintained by it." *Marchitto* v. *West Haven,* 150 Conn. 432, 437, 190 A.2d 597 (1963). Actions against public authorities founded upon such nuisance fall into three general classes: (1) nuisances which result from the conduct of the public authority in violation of a statute; (2) nuisances which are intentional in the sense that the creator intended to bring about the conditions constituting a nuisance; and (3) nuisances having their origin in negligence, that is, in the failure of the creator of the conditions to exercise due care. *Carabetta* v. *Meriden,* 145 Conn. 338, 339–40, 142 A.2d 727 (1958).

The first two categories are generally referred to as absolute nuisances. Id., 340. An absolute nuisance is one grounded in conduct which is intentional, not negligent. *Beckwith* v. *Stratford,* 129 Conn. 506, 510–11, 29 A.2d 775 (1942). "Intentional," in this context, means, "not that a wrong or the existence of a nuisance was intended but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance." Id., 511; *DeLahunta* v. *Waterbury,* 134 Conn. 630, 634, 59 A.2d 800 (1948).

A nuisance has been described as a condition, the natural tendency of which is to create danger and inflict injury upon person or property. *Kostyal* v. *Cass,* 163 Conn. 92, 99, 302 A.2d 121 (1972); Wright & Fitzgerald, Conn. Law of Torts § 128, p. 288. "To establish a nuisance four elements must be proven: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." *Filisko* v. *Bridgeport Hydraulic Co.,* 176 Conn. 33, 35–36, 404 A.2d 889 (1978). These elements are required in a nuisance action

against a town as well as against a private individual. Id., 35–37; *DeLahunta* v. *Waterbury,* supra, 634–35. Whether these elements exist is a question of fact. *Filisko* v. *Bridgeport Hydraulic Co.,* supra, 36; *Marchitto* v. *West Haven,* supra, 437.

The trial court's memorandum of decision indicates that the elements establishing an absolute nuisance were met. It found that the landfill was a condition created and maintained by the town which had a natural tendency to create an unhealthy and dangerous situation and to inflict damage, that the defendant's conduct unlawfully violated the environmental laws of this state, that the condition was a continuing one to the extent that the town did not or could not abate it, and that the contamination of the plaintiffs' well was undoubtedly caused by the leachate from the town's landfill. In view of the evidence presented to the trial court, we cannot say that the determination that an absolute nuisance existed was clearly erroneous. See *Peterson* v. *Oxford,* 189 Conn. 740, 747, 459 A.2d 100 (1983).

The town's second claim is that the trial court's injunction is not sufficiently clear and definite in its terms to enable the town to comply with the order. It is a general requirement when an injunction is granted that "the decree should be sufficiently clear and definite in its terms for the defendant to be able to determine with reasonable certainty what conduct on his part is required or prohibited." *Adams* v. *Vaill,* 158 Conn. 478, 485–86, 262 A.2d 169 (1969).

After carefully reviewing the trial court's memorandum of decision, we conclude that the injunctive relief ordered was sufficiently clear and definite for the town to know what it was required to do. The injunctive order is phrased in the following manner: "Judgment is to enter enjoining the defendant from continuing the

nuisance and to take such corrective measures to enable the plaintiffs to be free from contamination emanating from the landfill." On the preceding page of the memorandum of decision the following language appears: "Under the first and second counts the plaintiffs seek injunctive relief which involves elimination of solid wastes on the landfill and other corrective measures which relief and orders (Plaintiff's Exhibit 4)[2] the defendant has already been subjected to in a prior suit by the Department of Environmental Protection, which suit is pending in Hartford County. *The injunctive relief should follow the same as that litigation.*" (Footnote and emphasis added.) The trial court made clear that the injunctive relief it was granting to the plaintiffs was to be no different than the DEP orders by which the town was already trying to abide.

In addition, the broad phrase used by the trial court in its injunctive order is similar to the broad language used in the order by the DEP which was in evidence and was referred to by the court. See footnote 2, supra. In that document, the commissioner of DEP ordered the town "to take remedial actions to minimize or eliminate the contamination resulting from [the landfill]." The commissioner, however, also set down a detailed schedule for the town to follow to accomplish this broad order. Although the trial court did not duplicate that schedule in its memorandum of decision, its paraphrase of the broad language of the DEP order clearly directed the town to take the same action as detailed in that order.

There is no error.

In this opinion the other judges concurred.

---

[2] Although the memorandum of decision refers to "Plaintiffs' Exhibit 4," no plaintiffs' exhibit was given that enumeration. A review of the exhibits, however, indicates that the court was referring to the order designated "Plaintiffs' Exhibit Y" and that the trial court's mistake was merely clerical. The parties did not seek rectification of the trial court's memorandum and refer to the plaintiffs' Exhibit Y in their briefs.